Steven P. Rice (State Bar No. 094321)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Telephone:  (949) 798-1310
Facsimile:  (949) 263-8414
Email: srice@crowell.com

Kathleen Taylor Sooy (admitted *pro hac vice*)
Scott L. Winkelman (admitted *pro hac vice*)
Tracy A. Roman (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116
Email: ksooy@crowell.com
          swinkelman@crowell.com
          troman@crowell.com

Attorneys for Defendant
PEABODY ENERGY CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NATIVE VILLAGE OF KIVALINA, *et al.*,<br><br>                          Plaintiffs,<br><br>             v.<br><br>EXXONMOBIL CORPORATION, *et al.*,<br><br>                          Defendants | CASE NO. C08-01138 SBA<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT PEABODY ENERGY CORPORATION FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>DATE:  December 9, 2008.<br>TIME:  1 P.M.<br>JUDGE:  Hon. Saundra B. Armstrong |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 1 p.m. on December, 9, 2008, or as soon thereafter as

the matter may be heard, in the above-entitled court, defendant PEABODY ENERGY

CORPORATION ("Peabody") will move and hereby does move pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the Complaint with

prejudice.

By this Motion and the accompanying Memorandum of Points and Authorities, Peabody

seeks an order dismissing the Complaint with prejudice and without leave to amend.


DATED: June 30, 2008                    CROWELL & MORING LLP
                                        By: /s/  STEVEN P. RICE

                                        Attorney for Defendant
                                        PEABODY ENERGY CORPORATION

2

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.   BACKGROUND.......................................................................................................... 2

      A.    The Climate Change Backdrop ....................................................................... 2

      B.    The Federal Response to Coastal Erosion in Kivalina........................................ 5

      C.    The Allegations Against Peabody .................................................................... 7

III.  ARGUMENT ............................................................................................................... 8

      A.    Standard of Review........................................................................................... 8

            1.    Rule 12(b)(1) – Subject Matter Jurisdiction. ................................. 8

            2.    Rule 12(b)(6) – Failure to State a Claim. ....................................... 8

      B.    Plaintiffs Lack Standing. .................................................................................. 9

      C.    The Complaint Raises Nonjusticiable Political Questions............................... 10

            1.    Plaintiffs' Claims Trigger *Baker v. Carr* Political Question
                  Considerations............................................................................... 11

            2.    Other Courts Have Dismissed Similar Cases on Political Question
                  Grounds. ........................................................................................ 12

      D.    Plaintiffs' Federal Common Law Claim Is Displaced and State Common
            Law Claims Are Preempted. ........................................................................... 15

            1.    The Federal Common Law Claim is Displaced. ............................ 15

            2.    Plaintiffs' State Common Law Nuisance Claims Are Preempted. ........ 17

      E.    The Complaint Does Not Plausibly Demonstrate That Peabody
            Proximately Caused Plaintiffs' Alleged Injuries. ............................................ 18

      F.    Plaintiffs Cannot Show They Have Been Injured.............................................. 20

      G.    The Alleged Tortious Conduct Is Expressly Authorized by Statute................. 21

      H.    Plaintiffs Fail to State a Claim for Civil Conspiracy. ...................................... 22

      I.    Plaintiffs Fail to Plead Facts With Specificity Under Fed. R. Civ. P. 9(b)........ 23

      J.    Peabody's Actions Are Protected by the First Amendment............................... 24

      K.    Plaintiffs Fail to State a Claim for Concert of Action. ..................................... 25

1

CONCLUSION.......................................................................................................................27

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ii

28

1

## <u>TABLE OF AUTHORITIES</u>

2 **Cases**

3 *Alexander v. Sandoval*, 532 U.S. 275 (2001) ............................................................... 16

4 *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003)...................................................... 18

5 *Antolok v. United States*, 873 F.2d 369 (D.C. Cir. 1989)............................................. 14

6 *Applied Equip. v. Litton Saudi Arabia*, 7 Cal. 4th 503 (1994) .................................... 22

7 *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Oregon*, 515 U.S. 687 (1995)................. 19

8 *Baker v. Carr*, 369 U.S. 186 (1962)............................................................................. 11

9 *Bancoult v. McNamara*, 445 F.3d 427 (D.C. Cir. 2006)............................................... 14

10 *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .................................... 9, 17, 26

11 *Bennett v. Spear*, 520 U.S. 154 (1997)........................................................................... 9

12 *Berard v. General Motors Corp.*, 493 F. Supp. 1035 (D. Mass. 1980) ........................ 22

13 *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) ............................ 17

14 *California v. General Motors Corp.*, No. C06-05755, 2007 WL 2726871 (N.D. Cal. Sept. 17, 2007)............................................................................................ 13, 14

15 *Chavers v. Gatke Corp.*, 107 Cal. App. 4th 606 (Cal. Ct. App. 2003) .................. 22, 26

16 *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ........... 11

17 *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004)..................................... 9

18 *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ......................................... 10, 14

19 *City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) ............................................... 15, 16

20 *Comer v. Murphy Oil USA, Inc.*, No. 05-436 (S.D. Miss. Aug. 30, 2007), *appeal docketed*, No. 07-60756 (5th Cir. Oct. 22, 2007)............................................ 10, 13

21

22 *Connecticut v. Am. Elec. Power Co.*, 406 F. Supp. 2d 265 (S.D.N.Y. 2005), *appeal docketed*, No. 05-5104 (2d Cir. Sept. 22, 2005) ............................................ 2, 13, 15

23 *County of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179 (2d Cir. 2001) .................... 2

24 *Coupe v. Fed. Express Corp.*, 121 F.3d 1022 (6th Cir. 1997)........................................ 2

25 *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000).............................. 17, 18

26 *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211 (9th Cir. 1997) ...... 22

27

28

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)...................................................................16

*Farmers Ins. Exch. v. State*, 175 Cal. App. 3d 494 (Cal. Ct. App. 1985)....................................21

*Friends of H St. v. City of Sacramento*, 20 Cal. App. 4th 152 (Cal. Ct. App. 1993)....................21

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ......................................................24

*Green v. United States*, 67 F.2d 846 (9th Cir. 1933) ....................................................................2

*Helix Land Co. v. City of San Diego*, 82 Cal. App. 3d 932 (Cal. Ct. App. 1978).........................20

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) ..........................................................19

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995)....................18

*Jordan v. City of Santa Barbara*, 46 Cal. App. 4th 1245  (Cal. Ct. App. 1996) .........................20

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994)............................................................................24

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) ...........................................................8

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)..............................................................2

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................................9

*Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557 (Cal. Ct. App. 1990) .......................... 18, 19, 20

*Massachusetts v. EPA*, 127 S. Ct. 1438 (2007) .....................................................................4, 16

*Matter of Oswego Barge Corp.*, 664 F.2d 327 (2d Cir. 1981) ....................................................16

*Meigs v. Pinkham*, 159 Cal. 104 (1910)....................................................................................20

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, No. 06-7541, 2007 WL 2288329
    (N.D. Cal. Aug. 9, 2007) ................................................................................................ 23, 24

*Moore v. Regents of the University of California*, 51 Cal. 3d 120 (1990)....................................27

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ........................................................25

*Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835 (9th Cir. 202) ......................................................20

*Nat'l Audubon Soc'y v. Dep't of Water*, 869 F.2d 1196 (9th Cir. 1988) ............................... 15, 16

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001)...........................................................................8

*Nixon v. United States*, 506 U.S. 224 (1993) .............................................................................11

*O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994) ....................................................................16

ii

*Perry v. Mercedes-Benz of N. Am., Inc.*, 957 F.2d 1257 (5th Cir. 1992)..................................14

*Port Auth. of New York and New Jersey v. Arcadian Corp.*, 189 F.3d 305 (3d Cir. 1999)..........19

*Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142 (9th Cir. 1998).............................2

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974)....................................11

*Sindell v. Abbott Labs.*, 26 Cal. 3d 588 (1980).........................................................................26

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) .......................................................................16

*Summers v. Tice*, 33 Cal. 2d 80 (1948) ...................................................................................25

*Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) .........................................15

*Thornhill v. State of Alabama*, 310 U.S. 88 (1940) ..................................................................25

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001) .......................................25

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)..........................................23, 24

*Vieth v. Jubelirer*, 541 U.S. 267 (2004) ..................................................................................11

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .............................................................................8

*Yeboah v. United States Dep't of Justice*, 345 F.3d 216 (3d Cir. 2003) .....................................2

**Statutes**

42 U.S.C. § 7521 (2006) ..........................................................................................................15

44 U.S.C. § 1507 (2006) ............................................................................................................2

113 Stat. 1047 (1999)................................................................................................................3

114 Stat. 1441 (1999)................................................................................................................3

Cal. Civ. Code § 3482 (West 2008)..........................................................................................20

Consolidated Appropriations Act, 2005, Pub. L. No. 108-447 (2004)........................................6

Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7.........................................6, 7

Energy and Water Development Appropriations Act of 2004, Pub. L. No. 108-137...............6, 7

Energy Policy Act of 1992, 106 Stat. 2776................................................................................3

Energy Security Act, 94 Stat. 611 (1980) ..................................................................................2

Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 863 (2006)......................................20

iii

Flood Control Act of 1946, Pub. L. No. 79-526...................................................................5

Global Change Research Act, 15 U.S.C. §§ 2931-38 ...........................................................3

Global Climate Change Prevention Act, 104 Stat. 4058 (1990) .........................................3

Global Climate Protection Act, 15 U.S.C. § 2901 note ......................................................3

National Climate Program Act, 15 U.S.C. § 2901, *et seq.*.............................................2, 3

Private Sec. Litig. Reform Act of 1995, 15 U.S.C. § 78u-4 (2006) ...................................23

Rivers and Harbors Act of 1962, Pub. L. No. 87-874 ........................................................5

Shore Protection Cost Sharing Act of 1946, Pub. L. No. 79-727.......................................5

Veterans Benefits Administration, 112 Stat. 2461 (1998) ..................................................3

Water Development Act of 2000, Pub. L. No. 106-541 .......................................................5

**Other Authorities**

B. Witkin, *Summary of California Law,* Torts § 44 (9th ed. 1988)...................................22

Climate Security Act, S. 3036, 110th Cong. (2008) ...........................................................5

Climate Stewardship and Innovation Act of 2007, S. 280, 110th Cong. (2007)................5

Control of Emissions from New Highway Vehicles and Engines, 68 Fed. Reg. 52,922
    (Sept. 8, 2003).............................................................................................................4

Electric Utility Cap and Trade Act of 2007, S. 317, 110th Cong. (2007)........................5

Global Warming Pollution Reduction Act, S. 309, 110th Cong. (2007) ..........................5

H.R. Rep. No. 108-10 (2003) (Conf. Rep.) .......................................................................6

H.R. Rep. No. 108-357 (2003) (Conf. Rep.).....................................................................7

Letter from Stephen L. Johnson, EPA Administrator to Henry A. Waxman and Tom
    Davis, U.S. Representatives (March 27, 2008)............................................................5

Low Carbon Economy Act of 2007, S. 1766, 110th Cong. (2007) ...................................5

Restatement (Second) of Torts § 821B cmt. f (1965)......................................................21

Restatement (Second) of Torts § 876 (1965) ..................................................................26

S. Rep. No. 107-220 (2002) .............................................................................................6

iv

S. Res. 98, 105th Cong. (1997).................................................................................3

United Nations Framework Convention on Climate Change, May 9, 1992, 31 I.L.M 849,
    S. Treaty Doc. No. 102-38 (1992)...........................................................3, 18

U.S. Army Corps of Engineers, *Environmental Assessment and Finding of No Significant
    Impact: Section 117 Expedited Erosion Control Project Kivalina, Alaska* (2007) ...........7

U.S. Army Corps of Engineers, *Kivalina Relocation Master Plan, Final Report* (2006) ........7, 26

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* (5th
    ed. 1984) ................................................................................................19

**Rules**

30 C.F.R. § 75.323 .............................................................................................21

Fed. R. Civ. P. 12(b)(1) .......................................................................................8

Fed. R. Civ. P. 12(b)(6) .......................................................................................8

**Constitutional Provisions**

U.S. Const. art.  I ...............................................................................................12

U.S. Const. art. II ...............................................................................................11

v

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs are an Alaskan tribe and an incorporated Alaskan municipality where they reside, which is located 70 miles north of the Arctic Circle.  They have filed an action asking this Court in California to find that some two dozen companies, including Peabody Energy Corporation ("Peabody"), are responsible for property damage in Alaska allegedly resulting from loss of Arctic sea ice.  They do so under a "global warming" tort theory that has no basis in either federal or state law.

Peabody moves to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because the Court lacks subject matter jurisdiction and plaintiffs have failed to state a claim upon which relief may be granted.  *First*, the Court does not have subject matter jurisdiction over the lawsuit.  Plaintiffs lack Article III standing to bring their claims because their alleged injury is not fairly traceable to the actions of Peabody.  *Second*, plaintiffs' claims are nonjusticiable under political question doctrine because climate change and the related phenomenon of "global warming" are uniquely political in nature, bound up in questions of this nation's energy and economic policy, foreign and domestic relations, as well as interstate and foreign commerce.  *Third*, plaintiffs' claims are either displaced or preempted by the Clean Air Act and other acts and policies of Congress and the Executive Branch, which embody a federal policy that would be undermined by allowing so-called tort lawsuits like this one to proceed, under either a federal or state common law theory.[1]  *Fourth*, plaintiffs' nuisance

---

[1] Were this case to proceed, it would pose complex choice-of-law issues.  The Court need not address those issues at this stage, because plaintiffs' state law claims are defective regardless of which state's law applies.  The weaknesses of plaintiffs' state law claims law are illustrated below using California law; however, Peabody does not concede that California law governs plaintiffs' state law claims.

claims fail because the Complaint does not plausibly demonstrate that Peabody caused plaintiffs' alleged injuries. *Fifth*, plaintiffs cannot show that they have been injured. *Sixth*, where plaintiffs base their nuisance claims on the emission by Peabody of methane from mining operations, such conduct is expressly authorized by statute. *Seventh*, plaintiffs' claim of civil conspiracy to commit a nuisance fails because plaintiffs cannot state the underlying claim for nuisance. *Eighth*, to the extent the conspiracy is premised on a conspiracy to commit fraud, it fails because plaintiffs have not pled facts relating to any alleged fraud with the specificity required by Rule 9(b). *Ninth*, the conspiracy claim must also fail as to Peabody because Peabody's alleged actions are protected by the First Amendment. *Tenth*, plaintiffs' concert of action claim fails because plaintiffs cannot show that Peabody caused any damages to plaintiffs or encouraged others to do so.

## II.      BACKGROUND

### A.      The Climate Change Backdrop

Congress and the Executive Branch have long been focused on the issue of climate change, as the following brief summary demonstrates.[2]

As early as 1978, Congress enacted the National Climate Program Act, 15 U.S.C. § 2901, *et seq.*, through which it established a national climate program to study climate change.

---

[2] In deciding this motion, the Court may take notice of laws, proposed legislation, conventions, rules and other matters of public record. *See, e.g.*, 44 U.S.C. § 1507 (2006) (contents of Federal Register "shall be judicially noticed"); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (matters of public record); *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1146 (9th Cir. 1998) (publicly issued letters from an agency); *Green v. United States*, 67 F.2d 846 (9th Cir. 1933) (presidential proclamations); *Yeboah v. United States Dep't of Justice*, 345 F.3d 216, 222 n.3 (3d Cir. 2003) (pending legislation); *County of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179, 189 n.5 (2d Cir. 2001) (same); *Coupe v. Fed. Express Corp.*, 121 F.3d 1022, 1026 n.3 (6th Cir. 1997) (Federal Register); *Connecticut v. Am. Elec. Power Co.*, 406 F. Supp. 2d 265, 268 (S.D.N.Y. 2005) ("*AEP*"), *appeal docketed*, No. 05-5104 (2d Cir. Sept. 22, 2005*)*.

1    Congress followed in 1980 with the Energy Security Act, 94 Stat. 611, 774-75, through which it

2    directed the Office of Science and Technology Policy to work with the National Academy of

3    Sciences to study the impact of fossil fuel consumption and related activities on the Earth's

4    atmosphere.  In 1987, the Secretary of State was charged by Congress to coordinate international

5    negotiations on the topic of global warming on behalf of the United States.  Global Climate

6    Protection Act, 15 U.S.C. § 2901 note; *id.* § 2952(a).  In the same legislation, Congress directed

7    EPA to propose to Congress a "coordinated national policy on global climate change."  *Id*. §

8    2901 note.  In 1990, Congress enacted the Global Change Research Act, 15 U.S.C. §§ 2931-38,

9    establishing a ten-year, comprehensive research program to study global climate issues and

10   trends.  Congress has also enacted laws focusing on global warming and its effects with respect

11   to agriculture, Global Climate Change Prevention Act, 104 Stat. 4058 (1990), and energy,

12   Energy Policy Act of 1992, 106 Stat. 2776, 3002.

13         In 1992, President George H.W. Bush signed the United Nations Framework Convention

14   on Climate Change ("UNFCCC"), which stemmed from the 1987 Global Climate Protection Act,

15   and which the Senate subsequently ratified.  *See* UNFCCC art. 2, May 9, 1992, 31 I.L.M. 849, S.

16   Treaty Doc. No. 102-38 (1992).  The UNFCCC brought together an international coalition of

17   countries to address global warming on the global stage.  This convention in turn negotiated and

18   created the Kyoto Protocol in 1997, which President Clinton signed but which was never

19   presented to the United States Senate for ratification.  Indeed, the Senate passed a resolution

20   specifically objecting to the Kyoto Protocol.  *See* S. Res. 98, 105th Cong. (1997).  The Senate

21   expressed the view that the protocol would harm the U.S. economy by too severely curtailing

22   carbon dioxide emissions while doing nothing to regulate the emissions of developing nations

23   such as China and India, both significant emitters of carbon dioxide.  Congress subsequently

3

1   passed a series of laws barring EPA from implementing the Kyoto Protocol.  Veterans Benefits

2   Administration, 112 Stat. 2461, 2496 (1998); 113 Stat. 1047, 1080 (1999); 114 Stat. 1441,

3   1441A-41 (1999).

4           The current administration has adopted a policy of working in cooperation with other

5   countries to address global warming and climate change through a "prudent" and "realistic and

6   effective long-term approach."  Control of Emissions from New Highway Vehicles and Engines,

7   68 Fed. Reg. 52,922, 52,933 (Sept. 8, 2003).  The EPA has stated:  "It is hard to imagine any

8   issue in the environmental area having greater economic and political significance than

9   regulation of activities that might lead to global climate change."  *Id.* at 52,928.  The EPA also

10  has reaffirmed the view of the Administration that "climate change raises important foreign

11  policy issues" which are "the President's prerogative to address," *id.* at 52,931, and that

12  "[v]irtually every sector of the U.S. economy is either directly or indirectly a source of

13  [greenhouse gas] emissions, and the countries of the world are involved in scientific, technical,

14

15  and political-level discussions about climate change."  *Id.* at 52,928.

16          Furthermore, the Clean Air Act already provides a means for regulating greenhouse

17  gases.  *See Massachusetts v. EPA*, 127 S. Ct. 1438, 1462 (2007).  In *Massachusetts*, the Supreme

18  Court overturned an EPA denial of rulemaking petition asking the agency to regulate greenhouse

19

20  gas emissions from new motor vehicles under section 202(a)(1) of the Clean Air Act.  The Court

21  held that greenhouses gases, including carbon dioxide, fall within the Act's definition of "air

22  pollutant," and thus can be regulated by EPA under certain prescribed circumstances.  Because

23  EPA had previously denied the petition for rulemaking on the basis that it lacked authority to

24  regulate greenhouse gas emissions under the Clean Air Act for the purpose of addressing climate

25

26  change, the petition for rulemaking was remanded back to EPA for reconsideration in light of the

27                                                            4

1    Court's opinion.

2        In response to the Court's decision in *Massachusetts*, EPA has announced its intention to

3    issue an Advance Notice of Proposed Rulemaking to solicit public comment on numerous issues

4    related to possible regulation of greenhouse gases under the Clean Air Act, including possible

5    regulation of sources other than motor vehicles.  *See* Letter from Stephen L. Johnson, EPA

6    Administrator to Henry A. Waxman and Tom Davis, U.S. Representatives (March 27, 2008),

7    *available at* http://oversight.house.gov/documents/20080327170233.pdf.

8

9        Not only does the Clean Air Act allow EPA to regulate greenhouse gas emissions,

10   Congress has been actively debating comprehensive legislation focused specifically on

11   greenhouse gas emissions and the broader issue of climate change.  *See* Climate Security Act, S.

12   3036, 110th Cong. (2008); *see also* Climate Stewardship and Innovation Act of 2007, S. 280,

13   110th Cong. (2007); Low Carbon Economy Act of 2007, S. 1766, 110th Cong. (2007); Electric

14   Utility Cap and Trade Act of 2007, S. 317, 110th Cong. (2007); Global Warming Pollution

15   Reduction Act, S. 309, 110th Cong. (2007).

16

17       In other words, the political process for addressing climate change issues has long

18   functioned and continues to function.

19       **B.    The Federal Response to Coastal Erosion in Kivalina**

20       Kivalina is the subject of Congressional attention.  Over 60 years ago, Congress

21   empowered the United States Army Corps of Engineers to address conditions caused by coastal

22   erosion in the United States.  Since then, Congress has specifically directed the Corps to assess

23   and provide technical support to respond to erosion in Alaskan communities, including,

24   specifically, Kivalina.  The Corps' sources of authority and major federal actions include:

25

26       •    The Flood Control Act of 1946, Pub. L. No. 79-526, § 14, authorizes the Corps to

27                                           5

28

provide emergency shore protection, and the Rivers and Harbors Act of 1962,
Pub. L. No. 87-874, § 103, authorizes the agency to reduce coastal storm damage.
The Shore Protection Cost Sharing Act of 1946, Pub. L. No. 79-727, also
authorizes the Corps to undertake coastal storm damage reduction projects.

- Congress has authorized the Corps to provide technical assistance to Native
American Tribes under the Tribal Partnership Program. *See* Water Development
Act of 2000, Pub. L. No. 106-541, § 203.

- In 2003, Congress authorized and directed the Corps to study coastal erosion in
seven Alaskan communities, including Kivalina. It asked the Corps to report on
several specific issues, including the costs of relocating these communities and
the time period that each community faces for relocation. Congress also directed
the agency to carry out any further necessary studies to address impacts of
erosion. *See* Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7,
H.R. Rep. No. 108-10, at 807 (2003) (Conf. Rep.), S. Rep. No. 107-220, at 23-24
(2002). Congress approved full federal funding for the coastal erosion study. *See*
Energy and Water Development Appropriations Act of 2004, Pub. L. No. 108-
137, § 12 (2003). The Corps submitted a report to Congress on its findings in
April 2006.

- In 2004, Congress approved full federal funding for the preparation of a baseline
erosion study to coordinate and plan responses and assistance for specified
Alaskan villages – including Kivalina. Consolidated Appropriations Act, 2005,
Pub. L. No. 108-447 (2004). The study is currently ongoing, and the Corps
expects to publish a final report of the study in late 2008.

- Also in 2004, Congress passed Section 117 of the Consolidated Appropriations
Act of 2005, which authorizes the Corps to carry out, *at full federal expense*,
construction and other projects for storm damage prevention and reduction,
coastal erosion, and ice and glacial damage in Alaska, *including relocation of
affected communities and construction of replacement facilities. See*
Consolidated Appropriations Act of 2005, Pub. L. 108-447, § 117 (2004).

- Pursuant to its Section 117 authority, the Corps has developed plans to undertake
a special project in Kivalina that includes construction of a 3,100-foot-long rock
revetment around the city to protect it from coastal erosion. Construction of
approximately 900 feet of revetment is expected to begin in 2008. According to
the Corps, work on the project will start in increments and additional revetment
will be constructed as needed to control erosion – possibly over the next 10 or
more years. The Corps already has prepared an Environmental Assessment and
Finding of No Significant Impact for this project, which was released in

6

1

2

September 2007.  *See* U.S. Army Corps of Engineers, *Environmental Assessment and Finding of No Significant Impact: Section 117 Expedited Erosion Control Project Kivalina, Alaska* (2007).[3]

3

4

5

6

7

- In June 2006, the Corps released a final report assessing relocation needs and options for Kivalina.  U.S. Army Corps of Engineers, *Kivalina Relocation Master Plan, Final Report* (2006).[4]  The investigation and report were conducted pursuant to congressional direction.  *See* Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7; H.R. Rep. No. 108-10, at 807; S. Rep. No. 107-220, at 23-24; Energy and Water Development Appropriations Act, 2004, Pub. L. 108-137; H.R. Rep. No. 108-357, § 112 (2003) (Conf. Rep.).

8

### C.    The Allegations Against Peabody

9

10

11

12

13

14

15

16

17

Notwithstanding the political nature of climate change, and the specific mechanisms created by Congress to address problems of coastal erosion in Kivalina, plaintiffs now seek to hold Peabody and a selected group of other companies liable for the purported effects of climate change on Kivalina.  Plaintiffs bring claims for public nuisance under the federal common law, public and private nuisance under state law, civil conspiracy and concert of action.  Among other things, plaintiffs ask the Court to award them monetary damages in an unspecified amount, and to enter a declaratory judgment for future monetary expenses and damages as plaintiffs may incur "in connection with the nuisance of global warming."  Complaint at ¶ 67.

18

The following allegations form the basis of plaintiffs' claims against Peabody:

19

20

- Global warming is destroying the village of Kivalina, and the village will either need to be abandoned or relocated at great cost.  *Id.* ¶¶ 1, 186.

21

22

23

24

25

26

---

[3] *Available at* http://www.poa.usace.army.mil/en/cw/Kivalina/Kivalina%20Erosion%20Control%20Environmental%20Assessment%20and%20FONSI.pdf.

[4] *Available at* http://www.poa.usace.army.mil/en/cw/Kivalina/Kivalina.html.

27

7

28

- Greenhouse gases trap atmospheric heat and cause global warming, which in turn causes arctic ice to melt. The melting of the arctic ice has resulted in the loss of protection from winter sea storms and increased Kivalina's vulnerability to coastal erosion. Coastal erosion risks destruction of structures and infrastructure in the village, and Kivalina is in danger of flooding. *Id.* ¶¶ 4, 185.

- Peabody, a Delaware corporation, emits greenhouse gases through mining operations. *Id.* ¶¶ 52, 53, 177. It produces coal which, through subsequent combustion, results in additional greenhouse gas emissions. *Id.* ¶ 178.

- Peabody is seeking to build two additional coal-fired power plants that will burn additional coal and not capture or store the carbon dioxide released in the process. *Id.* ¶ 179.

- Peabody participated in a "campaign" to inform the public that there is scientific uncertainty about the cause and effects of global warming. *Id.* ¶ 189.

## III.   ARGUMENT

### A.   Standard of Review

#### 1.   Rule 12(b)(1) – Subject Matter Jurisdiction.

Where a federal court lacks subject matter jurisdiction over a case, it dismisses under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction, and the plaintiff always bears the burden of demonstrating the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). When ruling on a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint to matters of public record. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

#### 2.   Rule 12(b)(6) – Failure to State a Claim.

Rule 12(b)(6) requires dismissal "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Conclusory allegations are insufficient to defeat a motion to dismiss, and

8

1 the Court may not draw unreasonable inferences in plaintiffs' favor. *See Cholla Ready Mix, Inc.*

2 *v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citations and quotations omitted). As the Supreme

3 Court recently declared, plaintiffs' allegations must demonstrate that their right to relief is more

4 than merely conceivable – it must be *plausible* on its face. *See Bell Atlantic Corp. v. Twombly*,

5 127 S. Ct. 1955, 1964-65 (2007).

6

7 **B.    Plaintiffs Lack Standing.**

8 Plaintiffs lack standing to pursue their claims. To demonstrate Article III standing,

9 plaintiffs must show (1) they have suffered an "injury in fact," meaning a concrete and

10 particularized injury that is not "conjectural" or "hypothetical"; (2) a credible causal connection

11 between the injury and the conduct complained of, meaning that the injury is "fairly . . .

12 trace[able] to the challenged action of the defendant"; and (3) it is "likely" as opposed to

13 "speculative" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of*

14 *Wildlife,* 504 U.S. 555, 560-61 (1992) (plurality opinion) (internal citations and footnotes

15 omitted). Plaintiffs fail this test.

16

17 *First*, plaintiffs fail to plead facts permitting a finding or inference that their alleged

18 injuries are "fairly traceable" to Peabody. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997). The

19 Complaint does not allege any facts that permit a finding or inference that *Peabody's actions*,

20 versus the actions of literally every other greenhouse gas emitter on the planet, today and in the

21 past, caused erosion of plaintiffs' village.

22

23 *Second*, the Complaint does not contain any facts permitting a finding or inference that

24 plaintiffs' claims are redressable by the Court. For this Court to provide plaintiffs their requested

25 remedy, it would first have to establish its own national policy on climate change and global

26 warming, since it would have to establish a benchmark by which a jury could fairly weigh the

27 9

28

1   reasonableness of defendants' greenhouse gas emissions.  In creating its own policy, the Court

2   would run the risk of contradicting policies established over the course of several decades by the

3   Congress and the Executive Branch, including policies currently being considered by Congress.

4   The Court should not accede to plaintiffs' request to invade the province of the other branches on

5   climate change policy.  *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992).

6

7            Another global warming tort suit was dismissed by a federal court on standing grounds.

8   In *Comer v. Murphy Oil USA, Inc.*, No. 05-436 (S.D. Miss. Aug. 30, 2007) (unpublished) (Exh.

9   1), *appeal docketed*, No. 07-60756 (5th Cir. Oct. 22, 2007), plaintiffs brought a purported class

10  action on behalf of a putative class of Mississippi residents and property owners who alleged

11  damages stemming from Hurricane Katrina.  The *Comer* plaintiffs asserted tort claims (including

12  nuisance claims) against many of the same companies who are defendants in this case (including

13  Peabody).  The *Comer* plaintiffs alleged that defendants' greenhouse gas emissions caused

14  global warming, which in turn warmed the oceans, increased storms and storm intensity, and

15  ultimately increased the intensity of Hurricane Katrina, thereby producing the alleged injuries,

16  including property damage and coastal erosion.  The court dismissed the case on standing

17  grounds, *inter alia*, finding plaintiffs' claims not fairly traceable to defendants.  This Court

18  should reach the same conclusion.

19  

20          **C.        The Complaint Raises Nonjusticiable Political Questions.**

21           Although plaintiffs have dressed up this case as a traditional tort action for damages, in

22  reality plaintiffs ask this Court to usurp the work of Congress and the Executive Branch and

23  establish the nation's climate change policy.  The Constitution prohibits the Court from doing so.

24  

25  

26  

27                                              10

28

**1.    Plaintiffs' Claims Trigger *Baker v. Carr* Political Question Considerations.**

The political question doctrine "is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962).  The judiciary has a critical, yet confined, role in our tripartite form of government:  when cases present political questions, "judicial review would be inconsistent with the Framers' insistence that our system be one of checks and balances." *Nixon v. United States*, 506 U.S. 224, 234-35 (1993).  Thus, where a case turns on a political question, courts lack the subject matter jurisdiction necessary to proceed.  *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974).  When political and policy choices are front and center, "[t]he responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984).

The Supreme Court has identified six separate grounds on which a claim is rendered nonjusticiable:

> (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; or (2) a lack of judicially discoverable and manageable standards for resolving it; or (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or (5) an unusual need for unquestioning adherence to a political decision already made;  or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Vieth v. Jubelirer,* 541 U.S. 267, 277-78 (2004) (quoting *Baker,* 369 U.S. at 217).  This case implicates many of the *Baker* grounds.

The first *Baker* ground is met because resolution of the issues surrounding global warming implicate matters that are constitutionally committed to the political branches.  Foreign policy is committed by the text of the Constitution to the Office of the President.  U.S. Const. art.

11

II §§ 2, 3.  Congress is empowered to regulate foreign and domestic commerce.  U.S. Const. art. I § 8.  The fundamental separation of powers principles embodied in the Constitution would be meaningless if the judiciary were to take over formulation and implementation of domestic economic and energy policy and to restrict the President's international negotiating strategy on climate change by subjecting lawful business activities to "global warming" tort liability.

On the second *Baker* ground, the judicial branch of government is not equipped with a set of "manageable standards" for resolving the challenges presented by the scientific theories of global warming.  Nor are courts equipped to formulate the nation's policy on the issue.  Plaintiffs nevertheless ask this Court to find Peabody – a coal producer engaged in legal business conduct – responsible for emitting certain gases, thereby causing global warming, thereby causing arctic sea ice to melt, thereby exposing plaintiffs' village to greater coastal erosion during winter sea storms.

The third *Baker* ground is implicated because an "initial policy determination" (*Jubelirer*, 541 U.S. at 278) regarding global warming theory and regulation is inextricably intertwined with the Complaint's request for relief.  In suing Peabody on a "nuisance" theory, plaintiffs effectively ask the Court to rule on our nation's choices about use of fossil fuels for energy, and more generally to decide the energy policy of the United States Government.  Doing so would implicate the fourth *Baker* ground, in that it would be tantamount to this Court announcing the country's energy policy to Congress and the Executive Branch and directing a new and different regulatory approach with respect to entities such as Peabody.

### 2.     Other Courts Have Dismissed Similar Cases on Political Question Grounds.

Other courts faced with similar lawsuits have dismissed them, recognizing that the courts

are not the appropriate forum to resolve disputes arising out of injuries allegedly caused by global warming.  In *AEP*, the plaintiffs sought abatement of the defendant electric utilities' alleged "contributions to the phenomenon commonly known as global warming."  406 F. Supp. 2d at 268.  The *AEP* plaintiffs alleged that the defendants were the largest emitters of carbon dioxide in the United States, and asserted (as plaintiffs assert here) that plaintiffs' case was "a simple nuisance claim of the kind courts have adjudicated in the past."  *Id.* at 272.  After analyzing the political question jurisprudence, and taking into consideration the extensive public track record of executive and congressional action on global warming, the Southern District of New York court dismissed the action.  In the *AEP* court's words, "none of the pollution-as-public-nuisance cases cited by Plaintiffs has touched on so many areas of national and international policy.  The scope and magnitude of the relief Plaintiffs seek reveals the transcendently legislative nature of this litigation."  *Id.* (emphasis added).  As the *AEP* court recognized, the claims before it could not be adjudicated without addressing the "initial policy determination[s]" surrounding global warming, determinations which have been and remain "an undertaking for the political branches."  *Id.* at 273-74.  The Southern District of Mississippi court reached a similar conclusion in *Comer*, finding that the claims in that case raised nonjusticiable political questions.  *See* Exh. 1.

Likewise, in *California v. General Motors Corp.*, another judge of this Court reached a similar result.  In that case, the State of California sued General Motors and other automakers for creating or contributing to global warming, which the State of California packaged as a public nuisance.  As in *AEP* and *Comer*, the Court dismissed the claims as raising nonjusticiable political questions.  *California v. General Motors Corp.*, No. C06-05755, 2007 WL 2726871, at *14 (N.D. Cal. Sept. 17, 2007).

The same outcome follows here.  It is irrelevant for purposes of the political question analysis that plaintiffs seek monetary damages rather than abatement or other injunctive relief.  An award of damages is no less a form of regulation than an injunction, a statute or an Executive Order.  "The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."  *Cipollone*, 505 U.S. at 521.  *See also Perry v. Mercedes-Benz of N. Am., Inc.*, 957 F.2d 1257, 1265 (5th Cir. 1992) ("We agree [with our sister circuit courts] that state damages awards based on tort liability can have a regulatory effect.") (alteration added).  Where, as here, resolution of plaintiffs' claims would impinge on the prerogatives of the political branches of government, the form of relief sought is not determinative.  For this reason, courts routinely dismiss cases seeking monetary damages on political question grounds.  *See, e.g.*, *Bancoult v. McNamara*, 445 F.3d 427, 438 (D.C. Cir. 2006) (dismissing suit for compensatory and punitive damages against United States and former government officials for eviction from island of Diego Garcia during the Cold War).  *See also Antolok v. United States*, 873 F.2d 369, 383-84 (D.C. Cir. 1989) ("It is the political nature of the [merits] question, not the *tort* nature of the individual claims, that bars our review and in which the Judiciary has no expertise.") (emphasis in original).

Indeed, in *California v. General Motors*, the Court addressed this very issue.  The State of California attempted to distinguish *AEP* on grounds that the *AEP* plaintiffs sought equitable relief, whereas California was seeking damages.  2007 WL 2726871, at *8.  The Court rejected this distinction, stating that "[r]egardless of the type of relief sought, the Court must still make an initial policy decision in deciding whether there has been an unreasonable interference with a right common to the general public."  *Id.* (citation and internal quotation marks deleted).  The Court observed that in order to find for plaintiffs, it would necessarily have to create a standard

14

by which alleged emitters could be judged, which would necessarily require it to weigh

competing interests – environmental, economic, industrial development – which are the

bailiwick of the political branches, not judges and juries.  *Id.*

Because the questions framing this action "'uniquely demand single-voiced statement of

the Government's views,'" they are "political questions that are consigned to the political

branches."  *AEP*, 406 F. Supp. 2d at 274 (citing *Baker*, 369 U.S. at 211).  Allowing this lawsuit

to proceed would pit this Court against decades of efforts by the two political branches on the

subject of greenhouse gas emissions.

**D.    Plaintiffs' Federal Common Law Claim Is Displaced and State Common Law Claims Are Preempted.**

Plaintiffs' purported federal common law claim conflicts with, and is therefore displaced

by, federal law and other actions and policies of the political branches.  This is true for two

reasons:  the claim (1) conflicts with the regulatory approach Congress has opted to take with

respect to global warming; and (2) conflicts with the political branches' control over our nation's

foreign policy.

**1.    The Federal Common Law Claim is Displaced.**

Federal courts, unlike state courts, do not have the power to develop and apply their own

rules of decision – they are not common law courts.  *See City of Milwaukee v. Illinois*, 451 U.S.

304, 312-13, 317 (1981); *Nat'l Audubon Soc'y v. Dep't of Water*, 869 F.2d 1196, 1201 (9th Cir.

1988).  The notion of a "federal common law" is thus an extremely limited one, and is found

only where Congress has given the courts the power to develop substantive law, or where "a

federal rule of decision is necessary to protect uniquely federal interests."  *Texas Indus., Inc. v.

Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (emphasis added).  For the most part, private

15

rights of action are for Congress to create. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004); *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *Milwaukee*, 451 U.S. at 313 (stating that *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), stands for the proposition that federal courts should leave the creation of private causes of action to Congress).

This is especially true where (1) the "collateral consequences" of recognizing such an action would have a potential adverse risk on foreign relations, *Sosa*, 542 U.S. at 727; or (2) Congress has already addressed the issue at hand and provided a remedy. *Milwaukee*, 451 U.S. at 314-15; *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994). Both concerns militate in favor of holding that to the extent a federal common law "global warming" nuisance claim even exists, it has been displaced by the actions of Congress and the Executive.

The past actions of the political branches demonstrate a clear foreign policy objective of refraining from joining a global alliance to severely curtail carbon dioxide emissions unless the emissions of developing nations are similarly curtailed. Furthermore, as the Supreme Court recognized in *Massachusetts v. EPA*, Congress already has provided a mechanism for regulating domestic greenhouse gas emissions in the Clean Air Act, upon a finding by EPA that such emissions endanger human health or welfare. *See Massachusetts v. EPA*, 127 S. Ct. at 1462; 42 U.S.C. § 7521(a)(1) (2006). If Congress desires a different approach, it is free to enact new legislation. What is clear is that Congress has spoken directly on this issue, and there is no room for the federal courts to craft their own rules of decision.[5] *See Milwaukee*, 451 U.S. at 317. *See also Matter of Oswego Barge Corp.*, 664 F.2d 327, 335 (2d Cir. 1981) (citing *Milwaukee* in

---

[5] Were the Court to find plaintiffs' state law nuisance claims tenable (which it should not for the reasons stated below), the federal common law claim should be dismissed because there cannot be both a federal and state common law governing the same conduct. *See National Audubon*, 869 F.2d at 1204.

1    concluding that "federal common law has been preempted as to every question to which the

2    legislative scheme 'spoke directly,' and every problem that Congress has 'addressed,'" and

3    pointing out that "separation of powers concerns create a presumption in favor of preemption

4    [displacement] of federal common law whenever it can be said that Congress has legislated on

5    the subject").

6

7    **2.    Plaintiffs' State Common Law Nuisance Claims Are Preempted.**

8        For similar reasons, plaintiffs' alternative state law nuisance claims are preempted.  It is

9    fundamental that where a state tort action would have a regulatory effect that conflicts with

10   federal law, the tort action is preempted by that federal law.  *See*, *e.g.*, *Buckman Co. v. Plaintiffs'*

11   *Legal Committee*, 531 U.S. 341, 348 (2001).  In this case, plaintiffs' state law nuisance claims, if

12   successful, would essentially require Peabody to conduct its business operations (should it wish

13   to avoid recurring liability) in a manner dictated by plaintiffs and this Court.  The result would be

14   regulation of Peabody's business activities in a manner inconsistent with the policies established

15   by our national political branches, including Congress's authorization of EPA to regulate

16   greenhouse gas emissions under the Clean Air Act, but only after that agency has made a

17   determination that a particular greenhouse gas endangers human health.  Because plaintiffs' state

18   law nuisance claims "must yield to the regulation of Congress," they are preempted.  *See Crosby*

19   *v. Nat'l Foreign Trade Council,* 530 U.S. 363, 373 (2000).  Permitting 50 conflicting judge-made

20   legal regimes to develop on top of this federal authority would be inimical to our federal system.

21       As noted above, the regulatory effect of plaintiffs' nuisance claims would also conflict

22

23   with the ability of Congress and the Executive Branch to establish and coordinate the United

24   States' foreign policy on global warming.  Through the UNFCCC, the Executive Branch, with

25   the approval of the Senate, adopted a policy of working with other nations, through international

26

27                                              17

28

1    bodies, to coordinate a cohesive approach to global warming.  *See* UNFCCC, S. Treaty Doc. No.

2    102-38 (President George H.W. Bush stating: "the global nature of climate change calls for the

3    widest possible cooperation by all countries and their participation in an effective and

4    appropriate international response").  It was to this end that, in 1997, the Senate passed a

5    resolution objecting to the adoption of the Kyoto Protocol.  Because the effects of such a tort

6    regime bear directly on the political branches' ability to conduct the nation's foreign policy,

7    plaintiffs' state law nuisance claims are preempted.  *See, e.g.*, *Am. Ins. Ass'n v. Garamendi,* 539

8    U.S. 396 (2003); *Crosby,* 530 U.S. at 373 (holding that state laws that stand as an obstacle to the

9    execution of foreign policy are preempted).

10

### E.    The Complaint Does Not Plausibly Demonstrate That Peabody Proximately Caused Plaintiffs' Alleged Injuries.

11

12        Plaintiffs' nuisance claims under either federal or state common law suffer from

13    the additional defect that the Complaint does not plausibly demonstrate Peabody

14    proximately caused any injury allegedly suffered by the plaintiffs.  *See Twombly*, 127 S.

15    Ct. at 1974.

16        Proximate cause is a necessary element of plaintiffs' nuisance claim.  *See Martinez v.*

17    *Pacific Bell*, 225 Cal. App. 3d 1557, 1565 (Cal. Ct. App. 1990).  The concept of "proximate

18    cause" is a familiar limitation on tort claims, invoked frequently in actions like this to

19    "eliminate[] the bizarre" and to separate legitimate theories of liability from "various far-fetched

20    hypotheticals."  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 536

21    (1995) (citation omitted).  As the United States Supreme Court has observed:

> In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond.  But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would set society on edge and fill the courts with endless litigation.

18

1

2    *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 266 n.10 (1992) (citing W. Keeton, D. Dobbs,

3    R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 41, p. 264 (5th ed. 1984) (internal

4    quotations and citation omitted)).

5        To establish causation, a plaintiff must show a "direct relation between the injury asserted

6    and the injurious conduct alleged." *Id.* at 268. "Proximate causation depends to a great extent

7    on considerations of the fairness of imposing liability for remote consequences." *Babbitt v.*

8    *Sweet Home Chapter of Cmtys. for a Great Oregon*, 515 U.S. 687, 713 (1995) (O'Connor, J.,

9    concurring). Where a complaint does not contain facts that would permit an inference that

10   defendant's actions were the proximate cause of a plaintiff's alleged injuries, courts do not

11   hesitate to dismiss. *See, e.g., Martinez,* 225 Cal. App. 3d at 1566 ("[T]he issue of proximate

12   cause ... becomes a question of law when the facts of the case permit only one reasonable

13   conclusion.") (citations omitted); *Port Auth. of New York and New Jersey v. Arcadian Corp.*, 189

14   F.3d 305, 317-18 (3d Cir. 1999) (proximate cause determination turns on "mixed considerations

15   of logic, common sense, justice, policy and precedent," and that "the court may conclude as a

16   matter of law that defendants' actions were not the proximate cause of the plaintiff's injury").

17

18       The indisputable fact that all living organisms, human and animal activity, and advanced

19   human efforts such as industrial and transportation methods, as well as innumerable planetary

20   events (such as volcanic eruptions and natural degradation of plant matter), emit greenhouse

21   gases precludes plaintiffs from showing that Peabody is the proximate cause of their alleged

22   injuries. Plaintiffs' Complaint does not plausibly demonstrate, or give rise to a reasonable

23   inference, that *Peabody's* emissions of greenhouse gases were a substantial factor in bringing

24   about plaintiffs' alleged injuries.

25

26

27                                                19

28

Furthermore, plaintiffs must be able to show that their alleged injuries were proximately caused *by Peabody's conduct*, and not merely the result of the independent and intervening acts of others. *See Martinez*, 225 Cal. App. 3d at 1565.  Although plaintiffs do not clearly allege precisely what Peabody conduct is the basis for their nuisance claims, to the extent they base their nuisance claims on Peabody's coal production (and not emissions), such conduct is too far removed in the chain of causation to have proximately caused plaintiffs' alleged injuries. *See, e.g.,* Complaint ¶ 178 (claiming that Peabody is responsible for "produc[ing] billions of tons of coal for combustion that has resulted in the emissions of billions of tons of greenhouse gases"). Because plaintiffs cannot state that Peabody's activities constitute a substantial factor in causing their alleged injuries, plaintiffs' claim for nuisance fails as a matter of law as to Peabody.

**F.      Plaintiffs' Damages Are Speculative.**

Plaintiffs' state law nuisance claims also fail because they do not meet the requirements of damage.  "An essential element of a cause of action for nuisance is damage or injury." *See, e.g., Helix Land Co. v. City of San Diego*, 82 Cal. App. 3d 932, 950 (Cal. Ct. App. 1978) (citing *Meigs v. Pinkham*, 159 Cal. 104, 109 (1910)); *Jordan v. City of Santa Barbara*, 46 Cal. App. 4th 1245, 1257 (Cal. Ct. App. 1996) (citation omitted).

The Complaint purports to seek damages relating to injuries plaintiffs allege from coastal erosion to compensate them for the costs of relocation.  Complaint ¶¶ 1, 250, 260, 264, 266. Given the ongoing efforts by the federal government to address these issues, plaintiffs' damages are too speculative to support a claim for relief.  *Nat'l Audubon Soc'y Inc. v. Davis*, 307 F.3d 835, 858 (9th Cir. 2002) (affirming dismissal based on plaintiffs' failure to state a claim where alleged damages rested on increased costs of flood damage that were "highly speculative").

**G.     The Alleged Tortious Conduct Is Expressly Authorized by Statute.**

To the extent plaintiffs' nuisance claims against Peabody arise from the allegations of Peabody's emission of methane from mining operations (Complaint ¶ 177), they should be dismissed because that activity is expressly authorized by statute.  Under the Federal Mine Safety and Health Act of 1977 ("Mine Act"), Congress mandated that all coal mines be ventilated so as to carry away gases, including methane.  *See* 30 U.S.C. § 863(b) (2006).  Pursuant to the regulatory authority provided under the Mine Act, the Secretary of Labor requires underground coal mines to be ventilated to maintain underground methane concentrations of less than one percent.  *See* 30 C.F.R. § 75.323(b) (2007).

"[C]onduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability."  Restatement (Second) Torts § 821B cmt. f (1965).  *See also* Cal. Civ. Code § 3482 (West 2008) ("Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."); *Farmers Ins. Exch. v. State*, 175 Cal. App. 3d 494, 503 (Cal. Ct. App. 1985) (plaintiffs' nuisance claim alleging property damages sustained from chemical release in a state pest eradication program barred by § 3482 because the state's statutes provided authority for the program and, pursuant to that authority, the Department of Food and Agriculture chose the precise means and methods to carry out the eradication program, including use of chemicals); *Friends of H St. v. City of Sacramento*, 20 Cal. App. 4th 152, 161 (Cal. Ct. App. 1993) (plaintiffs' nuisance claims against the city of Sacramento arising out of damages allegedly caused by a nearby highway construction project barred by § 3482 where several statutes authorized the city to maintain and manage its streets).  Because plaintiffs' claims against Peabody hinge on conduct expressly authorized by federal law, they must be dismissed.

1

### H.        Plaintiffs Fail to State a Claim for Civil Conspiracy.

2

3        Plaintiffs purport to state a claim for conspiracy, alternatively under federal or state

common law.  Complaint ¶¶ 268-77.  The federal common law claim for conspiracy fails

4

because no such claim exists.  *See Berard v. General Motors Corp.,* 493 F. Supp. 1035, 1042 (D.

5

Mass. 1980).

6

7        Plaintiffs' vague conspiracy claim also fails because a claim of civil conspiracy cannot

stand alone.  Although it is not clear from the Complaint what plaintiffs allege Peabody

8

conspired to do, if plaintiffs claim that Peabody conspired to commit or perpetuate a nuisance,

9

the conspiracy claim fails because plaintiffs have failed to state a nuisance claim.

10

11        Where, as here, a plaintiff alleges a civil conspiracy to commit a tort, the source of

substantive liability arises out of the breach of duty that gives rise to the underlying tort; liability

12

is not created by participation in the alleged conspiracy alone.  *See Chavers v. Gatke Corp.*, 107

13

14 Cal. App. 4th 606, 614 (Cal. Ct. App. 2003) (citing *Applied Equip. v. Litton Saudi Arabia,* 7 Cal.

15 4th 503, 514 (1994)); *see also* 5 B. Witkin, *Summary of California Law,* Torts § 44 (9th ed.

16 1988) ("Strictly speaking, however, there is no separate tort of civil conspiracy, and there is no

17 civil action for conspiracy to commit a recognized tort unless the wrongful act itself is

18 committed and damage results therefrom."); *Entm't Research Group, Inc. v. Genesis Creative*

19

*Group, Inc.,* 122 F.3d 1211, 1228 (9th Cir. 1997) (under California law, civil conspiracy is not a

20

separate cause of action).  Plaintiffs' claim for civil conspiracy fails because plaintiffs cannot

21

show that Peabody owed a duty to plaintiffs or that Peabody breached a duty (*i.e.*, that Peabody

22

23 acted tortiously toward plaintiffs).  *Applied Equipment,* 7 Cal. 4th at 511.  Because plaintiffs'

24 nuisance claim fails, their claim for civil conspiracy also fails.

25

26

27                                              22

1    **I.    Plaintiffs Fail to Plead Facts With Specificity Under Fed. R. Civ. P. 9(b).**

2

3        Although it is not clear from the allegations in the Complaint, to the extent plaintiffs

4    attempt to state a claim for conspiracy to commit fraud as to Peabody, the claim should be

5    dismissed because plaintiffs fail to allege any acts of fraud with the specificity required by Rule

6    9(b) of the Federal Rules of Civil Procedure.[6]  *See, e.g., Mintel Learning Tech., Inc. v. Beijing*

7    *Kaidi Educ.*, No. 06-7541, 2007 WL 2288329, *4 (N.D. Cal. Aug. 9, 2007).  A plaintiff cannot

8    evade the heightened pleading requirements for fraud "by avoiding the use of that magic word."

9    *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).  Rule 9(b) imposes a

10   heightened pleading requirement when fraud forms the basis for a claim.  *See Vess*, 317 F.3d at

11   1106 (Rule 9(b) requires notice of "particular misconduct" allowing defendants to "defend

12

13   against the charge and not just deny that they have done anything wrong") (citations and internal

14   quotation marks omitted).

15       The Complaint offers no specifics about Peabody's supposedly *misleading* conduct.[7]

16   Instead, it refers vaguely to the activities of certain trade associations, groups, and organizations

17   that allegedly represent "the coal industry" or that have the word "coal" in their names.  *See, e.g.,*

18   Complaint ¶¶ 190, 194, 201.  The Complaint offers no allegations about Peabody's supposed role

19

20   in these groups, or exactly when, where, or how Peabody contributed to a purported campaign to

21

22   ―――――――――――

[6] The Complaint states that "[t]here has been a long campaign by power, coal, and oil companies to *mislead* the public about the science of global warming" and "[t]he purpose of this campaign

23   has been to enable the electric power, coal, oil and other industries to continue their conduct contributing to the public nuisance of global warming by convincing the public at-large and the

24   victims of global warming that the process is not man-made when in fact it is."  Complaint ¶ 189 (emphasis added); *see also id.* ¶ 269.

25   [7] Nor is there any allegation that anyone was actually misled, let alone *by Peabody*.  Thus, any fraud-based conspiracy claim fails for lack of reliance.  *See Vess*, 317 F.3d at 1105.

26

27                                          23

28

mislead the public. In fact, apart from the first paragraph under the Complaint's "civil

conspiracy allegations," which alleges that Peabody was one of eight defendants involved in a

campaign to mislead the public about the science of global warming, Peabody is not even

mentioned in the conspiracy allegations. Under Rule 9(b), the conspiracy claim against Peabody

fails. *See Mintel Learning Tech.*, 2007 WL 2288329, at *11 (claims for fraudulent conduct must

allege the precise time, place, and nature of the misleading statements, misrepresentations, or

specific acts of fraud) (citing *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *In re GlenFed,

Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994), *superseded by statute on other grounds*,

Private Sec. Litig. Reform Act of 1995, 15 U.S.C. § 78u-4 (2006).

### J.    Peabody's Actions Are Protected by the First Amendment.

In defiance of one last constitutional safeguard, plaintiffs seek to regulate speech. In

particular, they seek to forbid the sharing of information with which they do not agree.

Assuming for arguments' sake that various parties, including Peabody, hatched a plan to cast

doubt in the public's mind about the science of global warming, they had an absolute right to do

so under the First Amendment.

The Complaint alleges a deception of the public about global warming, effectuated

through articles in the *Wall Street Journal*, *Washington Times*, and *New York Times* (Complaint

¶¶ 191, 218-19), through radio and television campaigns and the mails (*id.* ¶¶ 194, 222), and

through presentations, press releases, and the publication of reports, memos, and newsletters, all

distributed to the public or available for public review (*id.* ¶¶ 204, 205, 207, 212-13, 223, 229).

Plaintiffs allege, in short, that defendants have engaged in the lawful, free exercise of speech on

an issue of profound public interest. *See Vess*, 317 F.3d at 1110 (medical professional

association's publication of its diagnostic manual and advocacy group's public campaign touting

24

1 the benefits of a particular drug were protected speech, notwithstanding alleged conspiracy

2 consisting of acts of making false statements and misrepresentations, and spreading

3 misinformation); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 446-47 (2d Cir. 2001)

4 (recognizing that it is well settled that the First Amendment protects "scientific expression and

5 debate" as much as political or artistic expression) (citation omitted).

6

7   Plaintiffs' allegations of "falsity" presupposes that debate regarding the causes and

8 effects of global warming opinion is both inappropriate and closed to further scientific and

9 political scrutiny.[8]  The airing of opposing and even controversial opinions, however, is the

10 lifeblood of the First Amendment.  Participating in public debate on a matter of public

11 importance is not tortious, and neither is joining with others to spread one's message.  *See*

12 *Thornhill v. State of Alabama*, 310 U.S. 88, 101-02 (1940) ("The freedom of speech ...

13 guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully

14 all matters of public concern without previous restraint or fear of subsequent  punishment.");

15

16 *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 933 (1982) ("one of the foundations of our

17 society is the right of individuals to combine with other persons in pursuit of a common goal by

18 lawful means").

19   **K.**  **Plaintiffs Fail to State a Claim for Concert of Action.**

20   Plaintiffs' "concert of action" claim – apparently an attempt to hold Peabody jointly and

21 severally liable for the whole of plaintiffs' alleged damages (*see* Complaint ¶ 282) – does not

22 state a cognizable claim.  The concert of action theory of liability was first recognized in

23

24 *Summers v. Tice*, 33 Cal. 2d 80 (1948).  There, the plaintiff was struck in the eye when two

25 ---

[8] The Complaint itself demonstrates the value of the debate, noting that some of the alleged
26 "conspirators" re-thought their positions over time.  *See, e.g.*, Complaint ¶¶ 209, 243.

27 25

28

hunters each negligently shot their guns in his direction. Although plaintiff could not establish

which of the two hunters was directly responsible for his injuries, the court held that he could

recover damages from both. *Id.* at 86. Following *Summers,* California courts have imposed

liability on such grounds only in limited circumstances in which a small number of individuals

engaged in actions occurring over a discrete and brief period of time that caused injury to a

single plaintiff. *See, e.g., Chavers*, 107 Cal. App. 4th at 615. In such circumstances, defendants

are held liable either as a direct participant in the acts which caused injury, or because they

encouraged and assisted the person who directly caused the injuries by participating in joint

activity. *See Sindell v. Abbott Labs.*, 26 Cal. 3d 588, 605-06 (1980).

Here, plaintiffs cannot demonstrate that Peabody directly caused any damages or

encouraged others who have. *See* Restatement (Second) of Torts § 876 (concert of action

liability may attach to an actor who personally causes harm to plaintiff as well as one who

"knows that the other's conduct constitutes a breach of duty and gives substantial assistance or

encouragement to the other"). There is no allegation that Peabody is directly responsible for any

tortious conduct against plaintiffs, and the Complaint is equally devoid of allegations that

Peabody has given "substantial assistance or encouragement" to anyone who has personally

caused harm to plaintiffs. Plaintiffs' incantation of "conspiracy" is not enough. *See Twombly*,

127 S. Ct. at 1965 ("a formulaic recitation of the elements of a cause of action will not do").

The remedy for plaintiffs' loss of their lands does not lie in this Court. The Corps noted

in a 2006 Report outlining relocation options for Kivalina that "[i]t has long been apparent that

the island would eventually succumb to natural forces, and that the village would have to be

moved." U.S. Army Corps of Engineers, *Kivalina Relocation Master Plan, Final Report* ES-1.

No case law supports holding Peabody jointly and severally liable with others under a "concert

26

of action" theory for "the natural forces" that have long been eroding plaintiffs' homeland, and

this case should not be used as the vehicle for a novel extension of this theory of relief. *See, e.g.*,

*Moore v. Regents of the Univ. of California*, 51 Cal. 3d 120, 142 (1990) (declining to extend

traditional tort principles to cover plaintiff's novel claim for conversion where issues raised by

plaintiff's claim were better suited to legislative resolution).

**CONCLUSION**

The Complaint should be dismissed as to Peabody Energy Corporation for lack of subject

matter jurisdiction and for failure to state a claim.


DATED:  June 30, 2008                          Respectfully Submitted,

                                               CROWELL & MORING LLP
                                               By: /s/  STEVEN P. RICE

                                               Attorney for Defendant
                                               PEABODY ENERGY CORPORATION

27

1

**CERTIFICATE OF SERVICE**

2

I, Tracy A. Roman, certify that on June 30, 2008, I electronically filed the foregoing

3

Notice of Motion and Motion to Dismiss of Defendant Peabody Energy Corporation for Lack of

4

Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim

5

Upon Which Relief May Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6), as well as the

6

accompanying Proposed Order, through the Court's ECF System and the document is available

7

for downloading.  I also certify that on June 30, 2008, copies of the foregoing documents were

8

served via U. S. Mail on the following:

9

10
        Dennis J. Reich
        Reich & Binstock, LLP

11
        4265 San Felipe Blvd., Suite 1000
        Houston, TX  77027

12

13
        Drew D. Hansen
        Susman Godfrey L.L.P.

14
        1201 Third Avenue, Suite 3800
        Seattle, WA  98101

15
        H. Lee Godfrey

16
        Eric J. Mayer
        Susman Godfrey L.L.P.

17
        1000 Louisiana Street, Suite 5100
        Houston, TX  77002

18
        James A. O'Brien

19
        Leeger Weiss LLP
        One William Street

20
        New York, NY  10004

21
        Philip H. Curtis
        Michael B. Gerrard

22
        Arnold & Porter, LLP
        399 Park Avenue

23
        New York, NY  10022

24
        Robert Meadows
        Tracie J. Renfroe

25
        King & Spalding LLP
        1100 Louisiana Street, Suite 4000

26
        Houston, TX  77002

27
        Jeffrey Bossert Clark
        Stuart A.C. Drake

28
        Susan E. Engel
        Kirkland & Ellis LLP

1     655 Fifteenth Street, N.W.
      Washington, D.C.  20005
2
      Ronald L. Olson
3     Munger Tolles & Olson
      355 South Grand Ave., Suite 3500
4     Los Angeles, CA  90071

5     F. William Brownell
      Allison D. Wood
6     Hunton & Williams LLP
      1900 K Street, N.W.
7     Washington, D.C.  20006

8     Benjamin S. Lippard
      Vinson & Elkins, LLP
9     1455 Pennsylvania Ave., N.W.
      Washington, D.C.  20004
10
      Kevin Patrick Holewinski
11    Jones Day
      51 Louisiana Avenue, N.W.
12    Washington, D.C.  20001

13    Thomas E. Fennell
      Michael L. Rice
14    Jones Day
      2727 N. Harwood Street
15    Dallas, TX  75201

16
                                    /s/ Tracy A. Roman
17

18

19

20

21

22

23

24

25

26

27

28

                              2

1

## __ATTESTATION OF SIGNATURES__

2          I hereby attest that I have on file all holograph signatures for any signatures indicated by

3    a "conformed" signature (/S/) within this e-filed document.

4

5                                                     /s/ Tracy A. Roman_____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NED COMER, ET AL.** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **Civil Action No. 1:05-CV-436-LG-RHW** |
| | § | |
| **MURPHY OIL USA, INC., ET AL.** | § | **DEFENDANTS** |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE CAME BEFORE THE COURT for hearing of the Motion to Dismiss

[146] filed on June 30, 2006, by Defendants, Alliance Resource Partners, L.P., Alpha Natural

Resources, Inc., Arch Coal, Inc., CONSOL Energy Inc., Foundation Coal Holdings, Inc.,

International Coal Group, Inc., Massey Energy Company, Natural Resource Partners L.P.,

Peabody Energy Corporation, and Westmoreland Coal Company, and joined by Defendants,

Allegheny Energy Corp., Entergy Corp., and Reliant Energy Corp. A hearing was conducted on

August 30, 2007, at which counsel for Plaintiffs and Defendants appeared. For the reasons stated

into the record at hearing, the Court finds that Plaintiffs do not have standing to assert claims

against Defendants and that Plaintiffs' claims are non-justiciable pursuant to the political

question doctrine. Defendants' Motion to Dismiss is therefore granted. Furthermore, due to the

lack of standing, the Court finds that Plaintiffs' claims against all defendants should be dismissed

*sua sponte*.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss [146]

filed by Defendants, Alliance Resource Partners, L.P., Alpha Natural Resources, Inc., Arch Coal,

Inc., CONSOL Energy Inc., Foundation Coal Holdings, Inc., International Coal Group, Inc.,

Massey Energy Company, Natural Resource Partners L.P., Peabody Energy Corporation, and

Westmoreland Coal Company, and joined by Defendants, Allegheny Energy Corp., Entergy Corp., and Reliant Energy Corp., is **GRANTED**. Plaintiffs' claims against these defendants are hereby **DISMISSED WITH PREJUDICE**.

      **IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiffs' claims against all other defendants are *sua sponte* **DISMISSED WITH PREJUDICE** for lack of standing.

      **IT IS FURTHER ORDERED AND ADJUDGED** that all remaining pending motions are hereby rendered **MOOT**.

      **SO ORDERED AND ADJUDGED** this the 30th day of August, 2007.

                            s/ *Louis Guirola, Jr.*
                            LOUIS GUIROLA, JR.
                            UNITED STATES DISTRICT JUDGE

1  Steven P. Rice (State Bar No. 094321)
   CROWELL & MORING LLP
2  3 Park Plaza, 20th Floor
   Irvine, CA  92614-8505
3  Telephone:  (949) 798-1310
   Facsimile:  (949) 263-8414
4  Email:  srice@crowell.com

5  Kathleen Taylor Sooy (admitted *pro hac vice*)
   Scott L. Winkelman (admitted *pro hac vice*)
6  Tracy A. Roman (admitted *pro hac vice*)
   CROWELL & MORING LLP
7  1001 Pennsylvania Avenue, N.W.
   Washington, D.C.  20004
8  Telephone:  (202) 624-2500
   Facsimile:  (202) 628-5116
9  Email:  ksooy@crowell.com
          swinkelman@crowell.com
10         troman@crowell.com

11 Attorneys for Defendant
   PEABODY ENERGY CORPORATION

12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                         OAKLAND DIVISION
15

16 NATIVE VILLAGE OF KIVALINA, *et al.*,        )   CASE NO. C08-01138 SBA
                                               )
17                       Plaintiffs,           )   **PROPOSED ORDER**
                                               )
18              v.                             )   Hon. Saundra B. Armstrong
                                               )
19 EXXONMOBIL CORPORATION, *et al.*,           )
                                               )
20                       Defendants            )
                                               )
21 _____)

22          **PROPOSED ORDER GRANTING MOTION TO DISMISS**
            **OF DEFENDANT PEABODY ENERGY CORPORATION**
23          **FOR LACK OF SUBJECT MATTER JURISDICTION**
                  **AND FAILURE TO STATE A CLAIM**
24
                This cause came before the Court for hearing of the Motion to Dismiss of Defendant
25
   Peabody Energy Corporation for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P.
26
   12(b)(1) and for Failure to State a Claim Upon Which Relief May be Granted Pursuant to Fed. R.
27
   Civ. P. 12(b)(6), filed on June 30, 2008.  A hearing was conducted on December 9, 2008, at
28

1  which counsel for plaintiffs and defendants appeared.

2         After consideration of the arguments, this Court finds the following:

3         1)    Plaintiffs do not have standing to bring their claims, because plaintiffs' alleged

4  injury is not fairly traceable to Peabody nor redressable by this Court. *See Bennett v. Spear*, 520

5  U.S. 154, 162 (1997); *Comer v. Murphy Oil USA, Inc.*, No. 05-436 (S.D. Miss. Aug. 30, 2007)

6  (unpublished), *appeal docketed*, No. 07-60756 (5th Cir. Oct. 22, 2007).

7         2)    Plaintiffs' "global warming" tort claims raise nonjusticiable political questions

8  under the factors articulated by the Supreme Court in *Baker v. Carr*, 369 U.S. 186, 217 (1962).

9  *See California v. General Motors Corp.*, No. C06-05755, 2007 WL 2726871, at *14 (N.D. Cal.

10  Sept. 17, 2007); *Connecticut v. Am. Elec. Power Co.*, 406 F. Supp. 2d 265, 273-74 (S.D.N.Y.

11  2005), *appeal docketed,* 05-5104 (2d Cir. Sept. 22, 2005).

12         3)    Plaintiffs' claims are both displaced and preempted by federal law and the

13  policies of the political branches in the areas of climate change, energy security, and foreign

14  relations. *See City of Milwaukee v. Illinois*, 451 U.S. 304, 314-15 (1981); *Buckman Co. v.*

15  *Plaintiffs' Legal Committee*, 531 U.S. 341, 348 (2001).

16         4)    Plaintiffs have failed to state a claim for nuisance under either federal or state

17  common law because the Complaint does not plausibly demonstrate that Peabody proximately

18  caused plaintiffs' alleged injuries and plaintiffs cannot show that they have in fact been injured.

19  *See Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557, 1565-66 (Cal. Ct. App. 1990); *Helix Land*

20  *Co. v. City of San Diego*, 82 Cal. App. 3d 932, 950 (Cal. Ct. App. 1978) (citing *Meigs v.*

21  *Pinkham*, 159 Cal. 104, 109 (1911)).

22         5) Plaintiffs' claims against Peabody fail to the extent they are directed at conduct that is

23  expressly sanctioned by statute and regulations authorizing Peabody to release methane. *See*

24  Cal. Civ. Code § 3482; 30 U.S.C. § 863(b); 30 C.F.R. § 75.323(b).

6)     Plaintiffs likewise fail to state a claim for civil conspiracy because there is no underlying, adequately pleaded nuisance claim, and plaintiffs have not fulfilled the heightened pleading requirements to sustain a claim that sounds in fraud.  *See Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 211, 1228 (9th Cir. 1997); *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, No. 06-7541, 2007 WL 2288329, *4 (N.D. Cal. Aug. 9, 2007).

7)     To the extent plaintiffs' conspiracy claim rests on the falsity of statements allegedly made by Peabody in the public arena, the claim is also barred by the First Amendment. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).

5)     Plaintiff fail to state a claim for concert of action because such claims are inappropriate where, as in this case, every living being emits the types of gases that plaintiffs claim are responsible for their alleged damages.  *See Chavers v. Gatke Corp.*, 107 Cal. App. 4th 606, 615 (Cal. Ct. App. 2003).

For all of these reasons, this Court lacks subject matter jurisdiction over plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) and plaintiffs have failed to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

It is hereby ORDERED AND ADJUDGED that the Motion to Dismiss of Defendant Peabody Energy Corporation for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim Upon Which Relief May Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED and plaintiffs' claims are hereby DISMISSED with prejudice as to Peabody.

So ORDERED AND ADJUDGED this the __ day of _____, 2008.

_____

Saundra Brown Armstrong
United States District Judge