1  Steven P. Rice (State Bar No. 094321)
   CROWELL & MORING LLP
2  3 Park Plaza, 20th Floor
   Irvine, CA  92614-8505
3  Telephone:  (949) 798-1310
   Facsimile:  (949) 263-8414
4  Email:  srice@crowell.com

5  Kathleen Taylor Sooy (admitted *pro hac vice*)
   Scott L. Winkelman (admitted *pro hac vice*)
6  Tracy A. Roman (admitted *pro hac vice*)
   CROWELL & MORING LLP
7  1001 Pennsylvania Avenue, N.W.
   Washington, D.C.  20004
8  Telephone:  (202) 624-2500
   Facsimile:  (202) 628-5116
9  Email:  ksooy@crowell.com
           swinkelman@crowell.com
10          troman@crowell.com

11 Attorneys for Defendant
   PEABODY ENERGY CORPORATION

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                          OAKLAND DIVISION

15

16 NATIVE VILLAGE OF KIVALINA, *et al.*,     )   CASE NO. C08-01138 SBA
                                            )
17                    Plaintiffs,           )   **AMENDED PROPOSED ORDER**
                                            )
18          v.                              )   Hon. Saundra B. Armstrong
                                            )
19 EXXONMOBIL CORPORATION, *et al.*,        )
                                            )
20                    Defendants.           )
                                            )
21 ─────────────────────────────────────────)

22       **AMENDED PROPOSED ORDER GRANTING MOTION TO DISMISS**
            **OF DEFENDANT PEABODY ENERGY CORPORATION**
23         **FOR LACK OF SUBJECT MATTER JURISDICTION**
                 **AND FAILURE TO STATE A CLAIM**
24
                This cause came before the Court for hearing of the Motion to Dismiss of Defendant
25
   Peabody Energy Corporation for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P.
26
   12(b)(1) and for Failure to State a Claim Upon Which Relief May be Granted Pursuant to Fed. R.
27
   Civ. P. 12(b)(6), filed on June 30, 2008.  A hearing was conducted on December 9, 2008, at
28

which counsel for plaintiffs and defendants appeared.  After consideration of the arguments, and based on the following Statement of Facts and Analysis, this Court finds that plaintiffs' claims must be dismissed with prejudice as to defendant Peabody Energy Corporation ("Peabody").

## STATEMENT OF FACTS

### I.    Plaintiffs' Allegations Against Peabody

Plaintiffs are an Alaskan tribe and an incorporated Alaskan municipality where they reside, which is located 70 miles north of the Arctic Circle.  Through this action, they are seeking damages for purported "global warming" torts.  Plaintiffs allege that greenhouse gases, and the phenomenon called climate change, are causing a loss of arctic sea ice along the coast of Kivalina, which has increased Kivalina's vulnerability to coastal erosion.  *See* Compl. ¶ 185. Plaintiffs claim that coastal erosion risks destruction of structures and infrastructure in the village, and Kivalina is in danger of flooding.  *Id.* ¶¶ 4, 185.  Plaintiffs allege that as a result, their village will need to be abandoned or relocated as a result of climate change-related damages.  *Id.* ¶¶ 1, 186.

Plaintiffs claim that Peabody emits greenhouse gases, in the form of methane and carbon dioxide, either directly or indirectly, through the production of coal for combustion.  *Id.* ¶¶ 52, 53, 177, 178.  In addition, plaintiffs claim that Peabody participated in a "campaign" to inform the public that there is scientific uncertainty about the cause and effects of global warming.  *Id.* ¶ 189.

### II.    Political Branches' Formulation of Climate Change Policy

Congress and the Executive Branch have long been focused on the issue of climate change.  As early as 1978, Congress enacted the National Climate Program Act, 15 U.S.C. § 2901, *et seq.*, through which it established a national climate program to study climate change. Congress followed in 1980 with the Energy Security Act, 94 Stat. 611, 774-75, through which it

directed the Office of Science and Technology Policy to work with the National Academy of Sciences to study the impact of fossil fuel consumption and related activities on the Earth's atmosphere. In 1987, the Secretary of State was charged by Congress to coordinate international negotiations on the topic of global warming on behalf of the United States. Global Climate Protection Act, 15 U.S.C. § 2901 note; *id.* § 2952(a). In the same legislation, Congress directed EPA to propose to Congress a "coordinated national policy on global climate change." *Id.* § 2901 note. In 1990, Congress enacted the Global Change Research Act, 15 U.S.C. §§ 2931-38, establishing a ten-year, comprehensive research program to study global climate issues and trends. Congress has also enacted laws focusing on global warming and its effects with respect to agriculture, Global Climate Change Prevention Act, 104 Stat. 4058 (1990), and energy, Energy Policy Act of 1992, 106 Stat. 2776, 3002.

In 1992, President George H.W. Bush signed the United Nations Framework Convention on Climate Change ("UNFCCC"), which stemmed from the 1987 Global Climate Protection Act, and which the Senate subsequently ratified. *See* UNFCCC art. 2, May 9, 1992, 31 I.L.M. 849, S. Treaty Doc. No. 102-38 (1992). The UNFCCC brought together an international coalition of countries to address global warming on the global stage. This convention in turn negotiated and created the Kyoto Protocol in 1997, which President Clinton signed but which was never presented to the United States Senate for ratification. Indeed, the Senate passed a resolution specifically objecting to the Kyoto Protocol. *See* S. Res. 98, 105th Cong. (1997). The Senate expressed the view that the protocol would harm the U.S. economy by too severely curtailing carbon dioxide emissions while doing nothing to regulate the emissions of developing nations such as China and India, both significant emitters of carbon dioxide. Congress subsequently passed a series of laws barring EPA from implementing the Kyoto Protocol. Veterans Benefits Administration, 112 Stat. 2461, 2496 (1998); 113 Stat. 1047, 1080 (1999); 114 Stat. 1441,

1441A-41 (1999).

The current administration has adopted a policy of working in cooperation with other countries to address global warming and climate change through a "prudent" and "realistic and effective long-term approach."  Control of Emissions from New Highway Vehicles and Engines, 68 Fed. Reg. 52,922, 52,933 (Sept. 8, 2003).  The EPA has stated:  "It is hard to imagine any issue in the environmental area having greater economic and political significance than regulation of activities that might lead to global climate change."  *Id.* at 52,928.  The EPA also has reaffirmed the view of the Administration that "climate change raises important foreign policy issues" which are "the President's prerogative to address," *id.* at 52,931, and that "[v]irtually every sector of the U.S. economy is either directly or indirectly a source of [greenhouse gas] emissions, and the countries of the world are involved in scientific, technical, and political-level discussions about climate change."  *Id.* at 52,928.

Furthermore, through the Clean Air Act, Congress has already provided a means for regulating greenhouse gases in the event that EPA finds that such emissions endanger human health or welfare.  *See Massachusetts v. EPA*, 127 S. Ct. 1438, 1462 (2007).  In *Massachusetts*, the Supreme Court overturned an EPA denial of rulemaking petition asking the agency to regulate greenhouse gas emissions from new motor vehicles under section 202(a)(1) of the Clean Air Act.  The Court held that greenhouses gases, including carbon dioxide, fall within the Act's definition of "air pollutant," and thus can be regulated by EPA under certain prescribed circumstances.  Because EPA had previously denied the petition for rulemaking on the basis that it lacked authority to regulate greenhouse gas emissions under the Clean Air Act for the purpose of addressing climate change, the petition for rulemaking was remanded back to EPA for reconsideration in light of the Court's opinion.

In response to the Court's decision in *Massachusetts*, EPA has announced its intention to

1    issue an Advance Notice of Proposed Rulemaking to solicit public comment on numerous issues

2    related to possible regulation of greenhouse gases under the Clean Air Act, including possible

3    regulation of sources other than motor vehicles.  *See* Letter from Stephen L. Johnson, EPA

4    Administrator to Henry A. Waxman and Tom Davis, U.S. Representatives (March 27, 2008),

5    *available at* http://oversight.house.gov/documents/20080327170233.pdf.

6
        Not only does the Clean Air Act allow EPA to regulate greenhouse gas emissions,

7    Congress has been actively debating comprehensive legislation focused specifically on

8    greenhouse gas emissions and the broader issue of climate change.  *See* Climate Security Act, S.

9
     3036, 110th Cong. (2008); *see also* Climate Stewardship and Innovation Act of 2007, S. 280,

10
     110th Cong. (2007); Low Carbon Economy Act of 2007, S. 1766, 110th Cong. (2007); Electric

11
     Utility Cap and Trade Act of 2007, S. 317, 110th Cong. (2007); Global Warming Pollution

12
     Reduction Act, S. 309, 110th Cong. (2007).

13

14   **III.    Congressional Attention to Kivalina Erosion Issues**

15
        Moreover, the Village of Kivalina, a plaintiff in this case, is the subject of Congressional

16   attention.  Over 60 years ago, Congress empowered the United States Army Corps of Engineers

17   (the "Corps") to address conditions caused by coastal erosion in the United States.  *See* Flood

18
     Control Act of 1946, Pub. L. No. 79-526, § 14; Rivers and Harbors Act of 1962, Pub. L. No. 87-

19
     874, § 103; Shore Protection Cost Sharing Act of 1946, Pub. L. No. 79-727.  Since then,

20
     Congress has specifically directed the Corps to assess and provide technical support to respond

21
     to erosion in Alaskan communities, including, specifically, Kivalina.  *See* Consolidated

22

23   Appropriations Resolution, 2003, Pub. L. No. 108-7, H.R. Rep. No. 108-10, at 807 (2003) (Conf.

24   Rep.), S. Rep. No. 107-220, at 23-24 (2002); Consolidated Appropriations Act of 2005, Pub. L.

25   108-447, § 117 (2004).

26
        Pursuant to congressional authority, the Corps has developed plans to undertake a special

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

project in Kivalina that includes construction of a 3,100-foot-long rock revetment around the city to protect it from coastal erosion. Construction of approximately 900 feet of revetment is expected to begin in 2008. According to the Corps, work on the project will start in increments and additional revetment will be constructed as needed to control erosion – possibly over the next 10 or more years. The Corps already has prepared an Environmental Assessment and Finding of No Significant Impact for this project, which was released in September 2007. *See* U.S. Army Corps of Engineers, *Environmental Assessment and Finding of No Significant Impact: Section 117 Expedited Erosion Control Project Kivalina, Alaska* (2007). Finally, in June 2006, the Corps released a final report assessing relocation needs and options for Kivalina. U.S. Army Corps of Engineers, *Kivalina Relocation Master Plan, Final Report* (2006).

## STANDARD OF REVIEW

The Court must dismiss a case under Rule 12(b)(1) of the Federal Rules of Civil Procedure where it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction, and the plaintiff always bears the burden of demonstrating the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). When ruling on a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint to matters of public record. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

Under Federal Rule 12(b)(6), the Court must dismiss a case "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Conclusory allegations are insufficient to defeat a motion to dismiss, and the Court may not draw unreasonable inferences in plaintiffs' favor. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citations and quotations omitted). Plaintiffs' allegations must demonstrate that their right to relief is more than merely conceivable – it must be plausible on its face. *See Bell Atlantic Corp. v. Twombly*,

1    127 S. Ct. 1955, 1964-65 (2007).

2                                    **ANALYSIS**

3    **I.    Standing**

4          To demonstrate Article III standing, plaintiffs must show (1) they have suffered an

5    "injury in fact," meaning a concrete and particularized injury that is not "conjectural" or

6    "hypothetical"; (2) a credible causal connection between the injury and the conduct complained

7    of, meaning that the injury is "fairly . . . trace[able] to the challenged action of the defendant";

8    and (3) it is "likely" as opposed to "speculative" that the injury will be "redressed by a favorable

9    decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (plurality opinion)

10   (internal citations and footnotes omitted).  In this case, the Court finds that plaintiffs have failed

11   to plead facts permitting a finding or inference that their alleged injuries are "fairly traceable" to

12   Peabody.  *See Bennett v. Spear*, 520 U.S. 154, 162 (1997).  The Complaint does not allege any

13   facts that permit a finding or inference that Peabody's actions, versus the actions of literally

14   every other greenhouse gas emitter on the planet, today and in the past, caused erosion of

15   plaintiffs' village.  Moreover, given the global nature of climate change and the daunting, if not

16   impossible, task of assigning liability for alleged climate change-related damages, the Court

17   further finds that the Complaint does not contain any facts permitting a finding or inference that

18   plaintiffs' claims are redressable by the Court.  Thus, the Court finds that plaintiffs do not have

19   standing to pursue their claims.  *See Comer v. Murphy Oil USA, Inc.*, No. 05-436 (S.D. Miss.

20   Aug. 30, 2007) (unpublished), *appeal docketed*, No. 07-60756 (5th Cir. Oct. 22, 2007).

21   **II.    Political Question Doctrine**

22          The political question doctrine "is primarily a function of the separation of powers."

23   *Baker v. Carr*, 369 U.S. 186, 210 (1962).  When cases present political questions, "judicial

24   review would be inconsistent with the Framers' insistence that our system be one of checks and

balances." *Nixon v. United States*, 506 U.S. 224, 234-35 (1993).  Thus, where a case turns on a

political question, this Court lacks the subject matter jurisdiction necessary to proceed.  *See*

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974).  When political and

policy choices are front and center, "[t]he responsibilities for assessing the wisdom of such

policy choices and resolving the struggle between competing views of the public interest are not

judicial ones."  *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 866

(1984).  The Supreme Court has identified six separate grounds on which a claim is rendered

nonjusticiable:

> (1) a textually demonstrable constitutional commitment of the issue to a
> coordinate political department; or (2) a lack of judicially discoverable and
> manageable standards for resolving it; or (3) the impossibility of deciding without
> an initial policy determination of a kind clearly for nonjudicial discretion; or (4)
> the impossibility of a court's undertaking independent resolution without
> expressing lack of the respect due coordinate branches of government; or (5) an
> unusual need for unquestioning adherence to a political decision already made;  or
> (6) the potentiality of embarrassment from multifarious pronouncements by
> various departments on one question.

*Vieth v. Jubelirer,* 541 U.S. 267, 277-78 (2004) (quoting *Baker,* 369 U.S. at 217).

As other courts confronted with global warming tort cases have found, this case

implicates many of the *Baker* grounds.  The first *Baker* ground is met because resolution of the

issues surrounding global warming implicates matters that are constitutionally committed to the

political branches.  Foreign policy is committed by the text of the Constitution to the Office of

the President.  U.S. Const. art. II §§ 2, 3.  Congress is empowered to regulate foreign and

domestic commerce.  U.S. Const. art. I § 8.  The fundamental separation of powers principles

embodied in the Constitution would be meaningless if the judiciary were to take over

formulation and implementation of domestic economic and energy policy and to restrict the

President's international negotiating strategy on climate change by subjecting lawful business

activities to "global warming" tort liability.

As to the second *Baker* test, the judicial branch of government is not equipped with a set

of "manageable standards" for resolving the challenges presented by the scientific theories of global warming. Nor are courts equipped to formulate the nation's policy on the issue. Plaintiffs nevertheless ask this Court to find Peabody – a coal producer engaged in legal business conduct – responsible for emitting certain gases, thereby causing global warming, thereby causing arctic sea ice to melt, thereby exposing plaintiffs' village to greater coastal erosion during winter sea storms. There are no standards upon which the Court could rely to determine that the greenhouse gas emissions of one entity have crossed the line from reasonable to wrongful.

The third *Baker* ground is implicated because an "initial policy determination" (*Jubelirer*, 541 U.S. at 278) regarding global warming theory and regulation is inextricably intertwined with the Complaint's request for relief. The Court cannot adjudicate plaintiffs' claims without ruling on our nation's choices about use of fossil fuels for energy, and more generally deciding the energy policy of the United States Government. Doing so would also implicate the fourth *Baker* ground, in that it would be tantamount to this Court announcing the country's energy policy to Congress and the Executive Branch and directing a new and different regulatory approach with respect to entities such as Peabody.

Thus, the Court finds that plaintiffs' "global warming" tort claims raise nonjusticiable political questions under the factors articulated by the Supreme Court in *Baker*. *See California v. General Motors Corp.*, No. C06-05755, 2007 WL 2726871, at *14 (N.D. Cal. Sept. 17, 2007); *Connecticut v. Am. Elec. Power Co.*, 406 F. Supp. 2d 265, 273-74 (S.D.N.Y. 2005), *appeal docketed,* 05-5104 (2d Cir. Sept. 22, 2005).

## III.    Displacement and Preemption of Plaintiffs' Common Law Claims

The Court also finds that plaintiffs' claims have been displaced by the actions of the political branches. Federal courts, unlike state courts, do not have the power to develop and apply their own rules of decision – they are not common law courts. *See City of Milwaukee v.*

*Illinois*, 451 U.S. 304, 312-13, 317 (1981); *Nat'l Audubon Soc'y v. Dep't of Water*, 869 F.2d 1196, 1201 (9th Cir. 1988). The actions of the political branches set forth above in the Statement of Facts demonstrate a foreign policy objective of refraining from joining a global alliance to severely curtail carbon dioxide emissions unless the emissions of developing nations are similarly curtailed. Moreover, as the Supreme Court recognized in *Massachusetts v. EPA*, Congress already has provided a mechanism for regulating domestic greenhouse gas emissions in the Clean Air Act, upon a finding by EPA that such emissions endanger human health or welfare. *See Massachusetts v. EPA*, 127 S. Ct. at 1462; 42 U.S.C. § 7521(a)(1) (2006). As a result, there is no room left for the federal judiciary to craft rules of decision in the area of climate change.

The federal actions that displace plaintiffs' federal law claims also preempt their state law claims. Where a state tort action would have a regulatory effect that conflicts with federal law, the tort action is preempted by that federal law. *See, e.g., Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 348 (2001). In this case, plaintiffs' claims would require the Court to make determinations – such as what level of greenhouse gas emissions are reasonable and who should bear liability for such emissions – that would conflict with the political branches' carefully balanced actions and policies in the areas of climate change, energy security, the economy, and foreign relations.

## IV.    Failure to State a Claim

The Court also finds that plaintiffs have failed to state a claim under either federal or state common law.

First, the Complaint does not plausibly demonstrate that Peabody proximately caused plaintiffs' alleged injuries and plaintiffs cannot show that they have in fact been injured. Proximate cause is a necessary element of plaintiffs' nuisance claim. *See Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557, 1565 (Cal. Ct. App. 1990). The concept of "proximate cause" is a

familiar limitation on tort claims, invoked frequently in actions like this to "eliminate[] the

bizarre" and to separate legitimate theories of liability from "various far-fetched hypotheticals."

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 536 (1995) (citation

omitted).

In this case, the indisputable fact that all living organisms, human and animal activity,

and advanced human efforts such as industrial and transportation methods, as well as

innumerable planetary events (such as volcanic eruptions and natural degradation of plant

matter), emit greenhouse gases precludes plaintiffs from showing that Peabody is the proximate

cause of their alleged injuries. Plaintiffs' Complaint does not plausibly demonstrate, or give rise

to a reasonable inference, that Peabody's emissions of greenhouse gases were a substantial factor

in bringing about plaintiffs' alleged injuries. *See Martinez v. Pacific Bell*, 225 Cal. App. 3d

1557, 1565-66 (Cal. Ct. App. 1990); *Helix Land Co. v. City of San Diego*, 82 Cal. App. 3d 932,

950 (Cal. Ct. App. 1978) (citing *Meigs v. Pinkham*, 159 Cal. 104, 109 (1911)).

Second, plaintiffs' state law nuisance claims also fail because their alleged damages are

speculative. "An essential element of a cause of action for nuisance is damage or injury." *See,*

*e.g., Helix Land Co. v. City of San Diego*, 82 Cal. App. 3d 932, 950 (Cal. Ct. App. 1978) (citing

*Meigs v. Pinkham*, 159 Cal. 104, 109 (1910)). Plaintiffs seek damages relating to injuries

plaintiffs allege from coastal erosion to compensate them for the costs of relocation. Compl. ¶¶

1, 250, 260, 264, 266. Given the ongoing efforts by the federal government to address these

issues, as set forth above in the Statement of Facts, plaintiffs' damages are too speculative to

support a claim for relief. *Nat'l Audubon Soc'y Inc. v. Davis*, 307 F.3d 835, 858 (9th Cir. 2002).

Third, plaintiffs' claims against Peabody also fail to the extent they are directed at

conduct that is expressly sanctioned by statute and regulations authorizing Peabody to release

methane. Under the Federal Mine Safety and Health Act of 1977 ("Mine Act"), Congress

1    mandated that all coal mines be ventilated so as to carry away gases, including methane.  *See* 30

2    U.S.C. § 863(b) (2006).  Pursuant to the regulatory authority provided under the Mine Act, the

3    Secretary of Labor requires underground coal mines to be ventilated to maintain underground

4    methane concentrations of less than one percent.  *See* 30 C.F.R. § 75.323(b) (2007).  "[C]onduct

5    that is fully authorized by statute, ordinance or administrative regulation does not subject the

6    actor to tort liability."  Restatement (Second) Torts § 821B cmt. f (1965).  *See also* Cal. Civ.

7    Code § 3482 (West 2008) ("Nothing which is done or maintained under the express authority of

8    a statute can be deemed a nuisance.").

9

10          Fourth, plaintiffs have failed to state a claim for civil conspiracy because a claim of civil

11   conspiracy cannot stand alone and, for the reasons described above, plaintiffs have not

12   adequately pled an underlying nuisance claim.  *Chavers v. Gatke Corp.*, 107 Cal. App. 4th 606,

13   614 (Cal. Ct. App. 2003) (citing *Applied Equip. v. Litton Saudi Arabia*, 7 Cal. 4th 503, 514

14   (1994)); *see also* 5 B. Witkin, *Summary of California Law,* Torts § 44 (9th ed. 1988).

15

16          Fifth, plaintiffs' conspiracy claims fail because, to the extent they have attempted to

17   plead a conspiracy to mislead on the part of Peabody, plaintiffs have not met Rule 9(b)'s

18   heightened pleading requirements.  *See Entm't Research Group, Inc. v. Genesis Creative Group,*

19   *Inc.*, 122 F.3d 211, 1228 (9th Cir. 1997); *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, No.

20   06-7541, 2007 WL 2288329, *4 (N.D. Cal. Aug. 9, 2007).

21

22          Sixth, plaintiffs' civil conspiracy claims also fail to the extent they rest on the falsity of

23   statements allegedly made by Peabody in the public arena, because they are barred by the First

24   Amendment.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).

25          Seventh, plaintiffs fail to state a claim for concert of action because, as described,

26   plaintiffs have failed to plead facts that support a finding that Peabody engaged in any wrongful

27   conduct or assisted anyone who has.  *See* Restatement (Second) of Torts § 876.  Concert of

28

action liability is especially inappropriate where, as here, every living being emits the types of gases that plaintiffs claim are responsible for their alleged damages. *See Chavers v. Gatke Corp.*, 107 Cal. App. 4th 606, 615 (Cal. Ct. App. 2003).

### <u>CONCLUSION</u>

For the reasons state above, the Court finds that it lacks subject matter jurisdiction over this case and that plaintiffs have failed to state a claim against Peabody. Thus, it is hereby ORDERED AND ADJUDGED that the Motion to Dismiss of Defendant Peabody Energy Corporation for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim Upon Which Relief May Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED and plaintiffs' claims are hereby DISMISSED with prejudice as to Peabody.

So ORDERED AND ADJUDGED this the __ day of _____, 2008.

_____

Saundra Brown Armstrong
United States District Judge

1

## CERTIFICATE OF SERVICE

2

I, Tracy A. Roman, certify that on July 1, 2008, I electronically filed the foregoing

3

Amended Proposed Order Granting the Motion to Dismiss of Defendant Peabody Energy

4

Corporation for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) and for

5

Failure to State a Claim Upon Which Relief May be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)

6

through the Court's ECF System and the document is available for downloading.  I also certify

7

that on July 1, 2008, copies of the foregoing documents were served via U. S. Mail on the

8

9

following:

10

Dennis J. Reich
Reich & Binstock, LLP

11

4265 San Felipe Blvd., Suite 1000
Houston, TX  77027

12

13

Drew D. Hansen
Susman Godfrey L.L.P.
1201 Third Avenue, Suite 3800

14

Seattle, WA  98101

15

H. Lee Godfrey
Eric J. Mayer

16

Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100

17

Houston, TX  77002

18

James A. O'Brien
Leeger Weiss LLP

19

One William Street
New York, NY  10004

20

21

Philip H. Curtis
Michael B. Gerrard
Arnold & Porter, LLP

22

399 Park Avenue
New York, NY  10022

23

24

Robert Meadows
Tracie J. Renfroe
King & Spalding LLP

25

1100 Louisiana Street, Suite 4000
Houston, TX  77002

26

27

Jeffrey Bossert Clark
Stuart A.C. Drake
Susan E. Engel

28

Kirkland & Ellis LLP
655 Fifteenth Street, N.W.

1     Washington, D.C.  20005

2     Ronald L. Olson
      Munger Tolles & Olson
3     355 South Grand Ave., Suite 3500
      Los Angeles, CA  90071
4
      F. William Brownell
5     Allison D. Wood
      Hunton & Williams LLP
6     1900 K Street, N.W.
      Washington, D.C.  20006
7
      Benjamin S. Lippard
8     Vinson & Elkins, LLP
      1455 Pennsylvania Ave., N.W.
9     Washington, D.C.  20004

10    Kevin Patrick Holewinski
      Jones Day
11    51 Louisiana Avenue, N.W.
      Washington, D.C.  20001
12
      Thomas E. Fennell
13    Michael L. Rice
      Jones Day
14    2727 N. Harwood Street
      Dallas, TX  75201
15

16                                                   /s/ Tracy A. Roman                    

17

18

19

20

21

22

23

24

25

26

27

28

Amended [Proposed] Order Granting Motion to Dismiss of Defendant Peabody Energy Corporation – C08-01138 SBA